E-FILED 2022 FEB 11 12:11 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ESTATE of RUTH C. BISIGNANO, by and through its administrator, FRED HUNTSMAN; and ESTATE of FRANK BISIGNANO, as successor in interest to RUTHIE BISIGNANO, by and through its administrator, FRED HUNTSMAN, <br><br> Plaintiffs, <br><br> v. <br><br> EXILE BREWING COMPANY, LLC, <br><br> Defendant. | CASE NO. CVCV060249 <br><br> **SECOND AMENDED PETITION FOR:** <br><br> 1) APPROPRIATION OF NAME AND/OR LIKENESS <br><br> 2) RIGHT OF PUBLICITY <br><br> 3) MISAPPROPRIATION OF TRADE VALUES <br><br> 4) CONSUMER FRAUD <br><br> 5) FALSE AND DECEPTIVE MARKETING UNDER IOWA COMMON LAW <br><br> 6) FEDERAL DECEPTIVE MARKETING AND FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125 (§ 43 OF THE LANHAM ACT) <br><br> <u>JURY DEMANDED</u> |

**COME NOW**, Plaintiffs, the Estate of Ruth C. Bisignano and the Estate of Frank Bisignano, and for their causes of action against Defendant Exile Brewing Company, LLC, state as follows:

1

E-FILED  2022 FEB 11 12:11 PM POLK - CLERK OF DISTRICT COURT

## PRELIMINARY STATEMENT

1. The following causes of action arise from the Defendant's unjustified and unpermitted knowing, willful, and intentional misappropriation of the interests and rights in the name, identity, persona, likeness, and symbol of the famous Des Moines bartender and tavern operator Ruthie Bisignano.

2. This case seeks to redress that misappropriation under common law and statutory law on the bases of the right of publicity, misappropriation of trade values, consumer fraud, false and deceptive marketing, and false designation of origin.

## JURISDICTION AND VENUE

3. The Iowa District Court in and for Polk County has proper jurisdiction over the parties pursuant to Iowa Code § 602.6101.

4. The amount in controversy exceeds the jurisdictional requirements.

5. Venue for filing is appropriate in the Iowa District Court in and for Polk County under Iowa Code § 616.14.

## PARTIES AND PERTINENT INDIVIDUALS

6. Ruth C. Bisignano ("Ruthie" or "Ruthie Bisignano") is deceased and this action is brought by the administrator of her estate, Fred Huntsman, a resident of Seattle, Washington. Ruthie died intestate, with her interest in claims passing to her husband, Frank Bisignano.

7. Frank Bisignano is deceased and this action is brought by the administrator of his estate, Fred Huntsman, a resident of Seattle, Washington.

8. The Estate of Ruth C. Bisignano and the Estate of Frank Bisignano (collectively "Plaintiffs") are the exclusive owners of those rights in and to Ruthie Bisignano's identity, persona, name, and likeness arising under common law and/or statute.

9. Pursuant to the Code of Iowa, Plaintiffs have a right to recover for losses due to the wrongful appropriation and use of Ruthie Bisignano's name, likeness, and persona. *See* Iowa Code §§ 611.20 and .22.

10. Defendant Exile Brewing Company, LLC (Exile) is a limited liability company organized and existing under the laws of the State of Iowa with a registered home office of 1514 Walnut Street, Des Moines, Polk County, Iowa 50309.

11. At all times material, Defendant was engaged in the production, promotion, advertising, selling, and commercial distribution of its flagship beer, "Ruthie," named after Ruthie Bisignano.

12. At all times material, Defendant was engaged in the production, promotion, advertising, selling, and commercial distribution of merchandise, including but not limited to apparel, tap handles, and posters, featuring or for the "Ruthie" beer.

13. At all times material, Defendant's production, promotion, advertising, selling, and commercial distribution of or for the "Ruthie" beer featured Ruthie Bisignano's identity or persona.

## STATEMENT OF THE CLAIM

14. Ceva Ruth-Lucille Bisignano (aka Ruth C. Bisignano) was a famous bartender from Des Moines who went by the professional name of Ruthie.

15. From 1950 to 1971, Ruthie owned and operated a bar called Ruthie's Lounge in Des Moines.

16. Ruthie became famous, statewide, nationally, and internationally, for her bar trick of filling two pint glasses while balancing them on her breasts and serving them without ever touching them with her hands.

17. Ruthie's serving skill attracted significant numbers of patrons who sometimes traveled across the country for the opportunity to see her in person.

18. For example, Cecil B. DeMille, the most commercially successful producer-director in Hollywood history, came to see her twice.

19. Ruthie was featured in several articles along with photos of her performing her beer-balancing trick.

20. Signs on her tavern's walls instructed patrons to "Ask for the well balanced beer."[1]

21. Due to her fame and notoriety, Ruthie was able to charge almost three times as much for drinks at her bar than elsewhere in town.

22. Ruthie was also famous for being charged and acquitted of indecency—as a result of performing her serving trick—multiple times in 1953.

---

[1] *Indecent Show!*, Charleville Times (Aug. 6, 1953), https://trove.nla.gov.au/newspaper/article/77003067.

23. The story of Ruthie, her serving trick, and the repeated charges made national and international news.

24. Another aspect to her famous persona was her reputation as a sassy, tough, quick witted, independent, and confident business operator, bartender, and woman.

25. In 1971, Ruthie sold Ruthie's Lounge and closed the door on her bartending and tavern-operating days.

26. Thereafter, she lived a relatively quiet life with her husband, Frank Bisignano, until her death in 1993.

27. Nevertheless, Ruthie remained famous for her beer-pouring talent after she retired from the tavern business and even after her death.

28. Exile is a brewery and brewpub restaurant in Des Moines, Iowa.

29. At all times material, Exile has featured and continues to feature a flagship beer called "Ruthie," which is a reference to Ruthie Bisignano.

30. Exile heavily relies on Ruthie's persona, identity, and name in its advertising, marketing, and promoting of the "Ruthie" beer.

31. For example, Exile describes the "Ruthie" beer as "[t]he world's best balanced beer,"[2] a slogan drawn from Bisignano's balancing trick.

32. Similarly, Exile's initial label and image for the "Ruthie" beer featured a catchphrase of "Incredible Balance."

---

[2] *Ruthie*, Exile Brewing Co., https://exilebrewing.com/beer_list/ruthie/ (last visited Mar. 17, 2020).

33. Additionally, Exile's labels and advertisements for the "Ruthie" beer feature images of Ruthie's likeness, engaging in her famous beer-pouring trick, in conjunction with her professional name, Ruthie.

34. A few years after Exile began selling the "Ruthie" beer, it redesigned the label and imagery for the beer.

35. The image in the redesigned label drew on Ruthie's reputation and persona of a confident, independent, powerful female bartender.

36. Beyond the "Ruthie" beer, Exile sells other merchandise, including but not limited to, apparel and beer tap handles, that feature Ruthie's likeness performing her signature move along with her professional name.

37. Exile regularly uses Ruthie's persona, identity, and name—along with images of Bisignano, in particular, the image of Ruthie that Exile has associated with the beer—to promote its business, goods, services, and own name, including but not limited to the following examples:

   a. Since 2014, Exile has organized and promoted its annual "Ruthie 10 kilometer run" event.

   b. On its social media pages, Exile has, *inter alia*, used the hashtag "CheerstoRuthie" and the caption "Ruthie o'clock" in its posts promoting its business, brewpub, and product; has reposted and shared videos, interviews, and articles discussing Exile, its business, the "Ruthie" beer, and Bisignano's story that inspired the beer's name and associated imagery; has encouraged users to celebrate Ruthie's birthday by

drinking a beer in her honor; and, most recently, has suggested users could imbibe a few "Ruthie" beers during the time period they are at home as a result of social distancing practices related to the spread of the novel coronavirus.

c. In 2018, Exile began its "Ruthie Breast Cancer Campaign."

  i. During the month of October, Exile uses pink "Ruthie" beer labels and 6-pack carriers, sells pink "Ruthie" shirts at its brewpub with a portion of the proceeds going to Susan G. Komen Greater Iowa, and donates $1.00 to Susan G. Komen Greater Iowa for every case of "Ruthie" beer sold.

  ii. Exile benefits from the use of Ruthie's name, persona, and identity in connection with the campaign, including, *inter alia*, profits that are not donated from the sales of the "Ruthie" beer and shirts, the goodwill generated for the business by engaging in and advertising its philanthropic endeavor, and tax benefits from making donations.

38. At all times material, Exile has induced and continues to induce third parties—such as distributors and retailers—to use, without Plaintiffs' permission, Ruthie's image, likeness, and/or other indicia of identity in connection with the marketing and promotion of goods and services bearing Ruthie's image, likeness, and other indicia of identity.

7

39. Exile has incurred substantial benefits from its appropriation and use of Ruthie's name, identity, likeness, and persona.

  a. The "Ruthie" beer has become Exile's best-selling beer and comprises more than half of Exile's annual production.

  b. Exile sells more than 7,000 barrels of "Ruthie" beer per year, making the "Ruthie" beer the best-selling Iowa-made beer in Iowa.

  c. According to a 2015 article in *The Des Moines Register*, one source indicated the "Ruthie" beer was fifth biggest seller in the country.[3]

40. Exile's appropriation of Ruthie's name, identity, and persona has substantially helped it expand its market and customer-base as well as promote its business.

  a. For example, the "Ruthie" beer was named the official craft beer of the 2019 Iowa State Fair.

  b. And the "Ruthie" beer was recently named the official beer of the Iowa Wild hockey team.

  c. The "Ruthie" beer is readily available on tap in bars and restaurants across the state of Iowa.

    i. The taps for which feature a figurine of Ruthie and were designed, produced, distributed, and sold for Exile's benefit.

---

[3] *Exile's Ruthie Lager Is a Big Hit*, Des Moines Reg. (Apr. 1, 2015), https://www.desmoinesregister.com/story/entertainment/dining/2015/04/01/exile-brewing-ruthie-craft-beer-lager/70795996/.

      ii. Additionally, Exile has capitalized on Ruthie's name, identity, and persona in marketing the "Ruthie" beer, oftentimes relying on only Ruthie's name, identity, and persona to promote its product when other brands promote their beer products by describing their taste, finish, aroma, and calory-count.

41. The "Ruthie" beer has become famous throughout Iowa and the United States because of its association with the unique and compelling persona and identity of Ruthie.

    a. The "Ruthie" beer has been featured in articles in national publications, including *The New Yorker* and on online forums with national readership, such as Vice.com and Brewbound.com.

    b. These articles focus more on the inspiration for Exile's product—Ruthie's identity and persona—than on the characteristics of the actual beer.

42. On the whole, in its marketing, promotion, and advertisement for the "Ruthie" beer, Exile relies significantly more on its appropriation of Ruthie's name, identity, and persona than on the particular characteristics of the beer as a beverage.

## COUNT I
## APPROPRIATION OF NAME AND/OR LIKENESS

43. Plaintiffs incorporate all paragraphs above as though fully set forth herein.

44. At all times material, Exile has used and continues to use Ruthie's name and/or likeness for its own purposes and benefits, including but not limited to, advertising, marketing, selling, and promoting its goods and/or services.

45. In so doing, Exile has sought to obtain for itself the values and benefits of Ruthie's name and/or likeness, which include but are not limited to, the reputation, prestige, social and/or commercial standing, and/or public interest of her name and/or likeness.

46. Exile has obtained and continues to obtain for itself the values and benefits of Ruthie's name and/or likeness.

47. Exile has neither sought nor received permission to appropriate Ruthie's name and/or likeness.

48. Exile's unlawful appropriation has caused Plaintiffs to suffer damages, including but not limited to, loss of the exclusive use of the values and benefits of Ruthie's name and/or likeness.

49. Exile knowingly and willfully used and continues to use, without Plaintiffs' permission, Ruthie's name and likeness for its purposes and benefits and in reckless and wanton disregard for Plaintiffs' rights and interests.

50. Accordingly, in addition to the actual damages herein alleged, Plaintiffs are entitled to an award of exemplary damages because of Exile's conduct.

51. Further, unless Exile in enjoined from further appropriation of Ruthie's name and/or likeness, Plaintiffs will suffer further irreparable injury.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment against Exile in an amount that will fully and fairly compensate Plaintiffs for the damages they have sustained, disgorgement of pecuniary gain resulting from the appropriation, exemplary damages, and interest as provided by law; assess the costs of this action, including attorney fees and litigation expenses, to Exile; enjoin Exile from using Ruthie's image, likeness, and other indicia of identity for any purpose without Plaintiffs' prior written consent; and order such other relief as this Court may deem just and proper.

## COUNT II
## RIGHT OF PUBLICITY

52. Plaintiffs incorporate all paragraphs above as though fully set forth herein.

53. At all times material, Exile, without permission, has used and continues to use Ruthie's name, likeness, and other indicia of identity in advertisements, promotions, and other marketing medium, inter alia, to promote its brewery, brewpub restaurant, and beer product.

54. Ruthie is identifiable from Exile's individual and/or combined use of her name, likeness, and/or indicia of identity.

55. Exile has gained great pecuniary benefit from the unauthorized use of Ruthie's name, likeness, and other indicia of identity to advertise, promote, and market its business, products, and services.

56. By the unauthorized use of Ruthie's name, likeness, and other indicia of identity to advertise, promote, and market its business, products, and services, Exile invaded Plaintiffs' interest in Ruthie's right of publicity.

57. As a result of Exile's infringement on Plaintiffs' interest in Ruthie's right of publicity, Plaintiffs have suffered damages including but not limited to loss of payment of any licensing opportunities for Exile's advertisements and promotions that use Ruthie's name, likeness, and/or other indicia of identity.

58. As a result of Exile's infringement on Plaintiffs' interest in Ruthie's right of publicity, Exile has obtained significant pecuniary gain.

59. Exile knowingly and willfully used and continues to use, without Plaintiffs' permission, Ruthie's name, likeness, and/or other indicia of identity to its benefit in reckless and wanton disregard for Plaintiffs' rights and interests.

60. Accordingly, in addition to the actual damages herein alleged, Plaintiffs are entitled to an award of exemplary damages because of Exile's conduct.

61. Further, unless Exile in enjoined from further use and publication of Ruthie's name, likeness, and other indicia of identity, Plaintiffs will suffer further irreparable injury.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment against Exile in an amount that will fully and fairly compensate Plaintiffs for the damages they have sustained, disgorgement of pecuniary gain resulting from the appropriation, exemplary damages, and interest as provided by law; assess the costs of this action, including attorney fees and litigation expenses, to Exile; enjoin Exile

from using Ruthie's image, likeness, and other indicia of identity for any purpose without Plaintiffs' prior written consent; and order such other relief as this Court may deem just and proper.

## COUNT III
## MISAPPROPRIATION OF TRADE VALUES

62. Plaintiffs incorporate all paragraphs above as though fully set forth herein.

63. There are intangible trade values in Ruthie's right of publicity.

64. Plaintiffs, as the owners of that right of publicity, are entitled to the exclusive use, control, and benefit from the right's intangible trade values.

65. As detailed above, Exile, without justification, infringed on Plaintiffs' interests in that right of publicity.

66. In so doing, Exile misappropriated the intangible trade values in that right.

67. As a result of Exile's misappropriation of trade values, Exile has obtained significant pecuniary gain.

68. Exile's misappropriation has caused and continues to cause Plaintiffs to suffer damages, including but not limited to loss of payment of any licensing, endorsement, and/or sponsorship opportunities as well as expenditures made to prevent, correct, and/or mitigate Exile's deception.

69. Exile knowingly and willfully misappropriated and continues to misappropriate Plaintiffs' interests in Ruthie's right of publicity and in reckless and wanton disregard for Plaintiffs' rights and interests.

70. Accordingly, in addition to the actual damages herein alleged, Plaintiffs are entitled to an award of exemplary damages because of Exile's conduct.

71. Further, unless Exile in enjoined from further misappropriation, Plaintiffs will suffer further irreparable injury.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment against Exile in an amount that will fully and fairly compensate Plaintiffs for the damages they have sustained, disgorgement of pecuniary gain resulting from the appropriation, exemplary damages, and interest as provided by law; assess the costs of this action, including attorney fees and litigation expenses, to Exile; enjoin Exile from misappropriating Plaintiffs' interests; and order such other relief as this Court may deem just and proper.

## COUNT IV
## CONSUMER FRAUD

72. Plaintiffs incorporate all paragraphs above as though fully set forth herein.

73. Exile has used and continues to use Ruthie's name, likeness, and/or other indicia of identity in connection with the marketing and promotion of its goods and services.

74. In doing so, Exile has and continues to falsely represent that Ruthie and/or her successors in interest endorse, sponsor, and/or approve Exile's goods and/or services.

75. Neither Ruthie nor her successors in interest have agreed to endorse, sponsor, and/or approve Exile's goods and/or services.

14

76. Exile's false representations have been and are made with the intent to deceive others in connection with the advertisement and/or sale of Exile's consumer merchandise, including but not limited to, the "Ruthie" beer.

77. Accordingly, Exile has engaged in prohibited practices and acts under Iowa Code section 714H.3.

78. Plaintiffs are consumers who have suffered an ascertainable loss of money and/or property, including but not limited to, in the form of their interests in the right to privacy and right of publicity.

79. Exile's willfully and knowingly has and continues to make the above-described false representations and in reckless and wanton disregard of Plaintiffs' interests and rights.

80. Accordingly, in addition to the actual damages herein alleged, Plaintiffs are entitled to an award of exemplary damages because of Exile's conduct.

81. Further, unless Exile in enjoined from continuing to make these false representations that deceive consumers, Plaintiffs will suffer further irreparable injury.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment against Exile in an amount that will fully and fairly compensate Plaintiffs for the damages they have sustained, disgorgement of pecuniary gain resulting from the consumer fraud, treble damages pursuant to Iowa Code section 714H.5(4), and interest as provided by law; assess the costs of this action, including attorney fees and litigation expenses, to Exile, pursuant to Iowa Code section 714H.5(2); enjoin

Exile from falsely suggesting and representing Ruthie or her successors in interest are connected with Exile's goods or services or endorse, sponsor, and/or approve Exile's goods or services; and order such other relief as this Court may deem just and proper.

## COUNT V
## DECEPTIVE MARKETING UNDER IOWA COMMON LAW

82. Plaintiffs incorporate all paragraphs above as though fully set forth herein.

83. Exile has used and continues to use Ruthie's name, likeness, and/or other indicia of identity in connection with the marketing and promotion of its goods and services.

84. In so doing, Exile has and continues to falsely suggest and represent that Ruthie and/or her successors in interest endorse, sponsor, approve, or are connected to Exile's goods and/or services.

85. Neither Ruthie nor her successors in interest have any connection to Exile's goods and/or services or have agreed to endorse, sponsor, or approve Exile's goods or services.

86. Exile's false representations are to Plaintiffs' commercial detriment because:

   a. They are likely to deceive and/or mislead prospective purchasers and affect their conduct, and

16

    b. They have caused and/or are likely to cause harm to Plaintiffs' pecuniary interests, including but not limited to, Plaintiffs' interests in licensing, endorsement, and sponsorship opportunities.

87. As a result of Exile's false representations, Plaintiffs have suffered damages including, but not limited to, loss of payment for licensing, endorsement, and/or sponsorship opportunities as well as expenditures made to prevent, correct, and/or mitigate the confusion or deception of prospective purchasers.

88. Exile knowingly and willfully has and continues to make the above-described false representations and in reckless and wanton disregard of Plaintiffs' interests and rights.

89. According, in addition to the actual damages herein alleged, Plaintiffs are entitled to an award of exemplary damages because of Exile's conduct.

90. Further, unless Exile in enjoined from continuing to make these false representations, Plaintiffs will suffer further irreparable injury.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment against Exile in an amount that will fully and fairly compensate Plaintiffs for the damages it has sustained, disgorgement of pecuniary gain resulting from these practices, exemplary damages, and interest as provided by law; assess the costs of this action, including attorney fees and litigation expenses, to Exile; enjoin Exile from falsely suggesting and representing Ruthie or her successors in interest are connected with Exile's goods or services or endorse, sponsor, and/or approve Exile's goods or services; and order such other relief as this Court may deem just and proper.

## COUNT VI
## FEDERAL DECEPTIVE MARKETING AND FALSE DESIGNATION OF ORIGIN

91. Plaintiffs incorporate all paragraphs above as though fully set forth herein.

92. At all times material, Exile has used and continues to use Ruthie's name, likeness, and/or other indicia of identity in connection with the marketing and promotion of its goods and services.

93. The goods and services in question have entered interstate commerce.

94. Exile's unauthorized use of Ruthie's image, likeness, and/or other indicia of identity falsely suggests, indicates, and/or represents that Exile and its "Ruthie" products are connected with, sponsored by, affiliated with, or related to Ruthie and/or Plaintiffs.

95. Exile's use of Ruthie's image, likeness, and/or other indicia of identity has a tendency to cause, has caused, and is likely to continue to cause confusion, mistake, or deception as to the source, sponsorship, or connection of Exile's "Ruthie" products.

96. Exile's false and deceptive use of Ruthie's image, likeness, and other indicia of identity were material because they, among other things, are intended and likely to influence consumers purchasing decisions.

97. Exile's unauthorized use of Ruthie's image, likeness, and/or other indicia of identity in connection with its "Ruthie" products is in violation § 43(a) of the Lanham Act 15 U.S.C. § 1125(a).

98. Exile's acts complained of herein have been deliberate, willful, and intentional and with full knowledge and conscious disregard of Plaintiffs' rights and with the intent to pass off as its own Ruthie's image, likeness, and/or other indicia of identity.

99. As a result of the foregoing alleged actions, Exile has been unjustly enriched and Plaintiffs have been injured and damaged. Unless the foregoing alleged actions are enjoined, Plaintiffs' will continue to suffer injury and damage.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment against Exile in an amount that will fully and fairly compensate Plaintiffs for the damages it has sustained, disgorgement of pecuniary gain resulting from these practices, exemplary damages, and interest as provided by law; assess the costs of this action, including attorney fees and litigation expenses, to Exile; enjoin Exile from falsely suggesting and representing Ruthie and/or her successors in interest have any connection with Exile's goods or services or endorse, sponsor, or approve Exile's goods or services; and order such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs requests a jury trial of all issues contained herein so triable in this action.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendant in an amount that will fully and fairly compensate Plaintiffs for their injuries and damages; for attorney fees, interest and costs as allowed by law, and punitive and enhanced damages against

Defendant; for the disgorgement of Defendant's profits from its unlawful conduct; for an order enjoining Defendant's unlawful conduct; and for such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ *Scott M. Wadding*
Scott M. Wadding  AT0010447
Matthew G. Sease AT0010484
SEASE & WADDING
104 Southwest Fourth Street
Des Moines, Iowa 50309
Telephone: (515) 883-2222
Facsimile: (515) 883-2233
swadding@seasewadding.com
msease@seasewadding.com
ATTORNEYS FOR PLAINTIFFS

Copy to:

Robert S. Keith
Alexis M. Wright
Kristina J. Kamler
1350 Woodmen Tower
Omaha, Nebraska 68102
Telephone: (402) 348-0900
Facsimile: (402) 348-0904
rkeith@ekoklaw.com
awright@ekoklaw.com
kkamler@ekoklaw.com
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon each of the attorneys of record of all parties to the above-entitled cause by enclosing the same in an envelope addressed to each such attorney at such attorney's address as disclosed by the pleadings of record herein on February 11, 2022.

By:  ☐ U.S. Mail          ☐ Facsimile
     ☐ Hand Delivered     ☐ Overnight Courier
     ☐ Federal Express    X E-File

Signature     /s/ *Scott M. Wadding*