IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| ESTATE OF RUTH C. BISIGNANO, by and through its administrator, FRED HUNTSMAN, and ESTATE OF FRANK BISIGNANO, as successor in interest to RUTHIE BISIGNANO, by and through its administrator, FRED HUNTSMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>EXILE BREWING COMPANY, LLC,<br><br>Defendant. | ) | CASE NO. 4:22-CV-121<br><br>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION REQUESTING THAT THIS COURT CERTIFY DETERMINATIVE QUESTIONS OF IOWA LAW TO THE IOWA SUPREME COURT** |

**COMES NOW** Defendant, Exile Brewing Company LLC, and hereby submits this brief in support of its Motion requesting that this Court certify determinative questions of Iowa law to the Iowa Supreme Court.

## I. FACTS

At its heart, this litigation and a related Appeal currently pending before the Iowa Supreme Court Appeal No. 22-288 ("Appeal") arise from claims made by Fred Huntsman ("Huntsman"). Huntsman claims that he has a right to inherit and control the use of the name and image of Ruth Bisignano, who passed away in 1993. Ruth was allegedly famous in the 1950's for balancing beer on her bosom and delivering it to customers. A full overview of the facts is set forth in the Section II of the Motion filed contemporaneously herewith. For the sake of brevity, those facts are incorporated herein by reference.

## II. PROCEDURE

The procedure for certifying questions of law shall be as provided in the Uniform Certification of Questions of Law Act. Iowa R. App. 6.301. This includes setting forth the questions of law to be answered and a statement of facts relevant to the questions certified,

showing fully the nature of the controversy in which the questions arose. This standard has been satisfied in the Motion filed contemporaneously herewith. Iowa Code § 684A.3.

## III. STANDARD FOR CERTIFICATION

Iowa has adopted the Uniform Certification of Questions of Law Act. Iowa Code § 684A.11. Pursuant to this Act, a federal court may certify a question of law to the Iowa Supreme Court if the answer (a) "may be determinative of the cause then pending litigation in the certifying court" and (b) "there is no controlling precedent in the decisions of the appellate courts of this state." Iowa Code § 684A.1; see also *In re McNeilus Manufacturing Explosion Coordinated Litigation*, 381 F.Supp.3d 1075, 1078 (D. Minn. 2019) (applying the Act in a federal case and declining to certify a question regarding the possible apportionment of fault under Minnesota's comparative fault statutes). Whether a federal district court should certify a question of state law to the highest state court "is a matter addressed to the discretion of the district court." *Packett v. Stenberg*, 969 F.2d 721, 726 (8th Cir.1992) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

Federal courts evaluate seven factors when determining whether to certify an issue to the Iowa Supreme Court including:

> (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; [] (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification . . . [and (7)] whether there is any split of authority among those jurisdictions that have considered the issues presented in similar or analogous circumstances.

*Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 964 F. Supp. 2d 951, 961 (N.D. Iowa 2013) (quoting *Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980 F. Supp. 300, 310 (N.D. Iowa 1997)). These factors weigh in favor of certification.

## IV. ANALYSIS

### (1) The extent to which the legal issue under consideration has been left unsettled by the state courts

The issues involved in this matter have been left unsettled by the state courts. Within the docket from this case is an Order on a Rule 12(b)(6) Motion to Dismiss confirming that Plaintiffs "cannot cite to any Iowa case" where causes of action for:

Count II: Unfair Competition – Appropriation of the Commercial Value of Ruthie's Identity and Infringement of the Right of Publicity under Iowa Common Law;

Count III; Unfair Competition – Misappropriation of Trade Values under Iowa Common Law; or

Count V; Deceptive Marketing – Misrepresentation Regarding Endorsement and/or Approval under Iowa Common Law

have been recognized. Doc. No. 2, p. 81 (Order on Motion to Dismiss, dated Aug. 18, 2020, p. 4-5). At that time, the District Court reasoned that "[l]ike any other legal issue, the Iowa Supreme Court will have the ultimate say" as to whether these causes of action will be adopted and made part of Iowa's common law.

On a Motion for Summary Judgment filed prior to this case being removed to federal court, the District Court for Polk County similarly noted in a foot note "On November 16, 2021, the Polk County Probate Court in Case Nos. ESPR040450 and ESPR033730 entered an order finding it had jurisdiction to reopen the Estates…[this District Court] does not stand in appellate capacity of the

Probate Court, it takes no action as it relates to Exile's arguments related to jurisdiction and standing." Doc. No. 5, p. 155 (Order on Cross Motions for Summary Judgment, p. 3).

Given these observations by the District Court over seeing this case prior to it being removed, there is a clear and undeniable lack of case law deciding the issues. Mainly, there is no existing appellate case law where any Iowa appellate court confirmed that a right of publicity, unfair competition, or deceptive marketing cause of action would be recognized in Iowa's common law. Even more unsettled is the issue of whether and under what circumstances these causes of action can be filed on behalf of Estates that had previously been closed for decades under Iowa's Probate Code. The purpose of certification is to ascertain what the state law is. *Foley v. Argosy Gaming Co.*, 688 N.W.2d 244, 248 (Iowa 2004). As such, the questions presented through this Motion to Certify serve the precise purpose of certification – ascertain what the Iowa state law is concerning rights of publicity, unfair competition, and deceptive marketing, as well as whether any person has the legal right to pursue those rights by or on behalf of Iowa residents who passed away decades ago. Accordingly, this factor weighs in favor of certification.

**(2) The availability of legal resources which would aid the court in coming to a conclusion on the legal issue**

Because the Iowa Supreme Court is already deciding Appeal No. 22-288, the pertinent facts and evidence have already been submitted to the Iowa Supreme Court. Ex. 1, Notice of Appeal, Ex. 2, Motion to Strike, Ex. 3, Order on Motion to Strike, Ex. 6, Notice of Retention. Notably, the Iowa Supreme Court has already taken judicial notice of the evidence entered in this litigation. The Iowa Supreme Court will already have to expend considerable judicial resources to review the record of both the Probate Court and this Court decide the legal issues pending in the Appeal. *Id.* Asking the Iowa Supreme Court continue the analysis of those legal issues and to confirm what impact, if any, its decision has on this litigation serves the interest of judicial

economy. First, it prevents duplicative reviews of the record by two courts. It also avoids overlapping and/or inconsistent decisions by the two courts, as well as appeals that would undoubtedly result if inconsistent decisions were rendered by the two courts. As such, this factor weighs in favor of certification.

**(3) The court's familiarity with the pertinent state law**

Where the outcome is controlled primarily by state law, as opposed to a mix of state and federal law, certification to the state supreme court is appropriate. *Rural Water Sys. No. 1 v. City of Sioux Center, Iowa*, 967 F.Supp. 1483 (N.D. Iowa 1997). As noted in paragraph (1) of this Analysis, this case involves multiple questions of first impression under Iowa's common law, including but not limited to whether a right of publicity will be adopted by the Iowa Supreme Court, who (if anyone) has standing to pursue a right of publicity claim for a long-deceased person under Iowa law if that right is adopted. Likewise, if new causes of action are adopted there are corresponding issues concerning what limitations on those causes of action will be adopted. Thus, the Court best situated to decide these state law issues is the Iowa Supreme Court, not this federal court. As such, this factor weighs in favor of certification.

**(4) The time demands on the court's docket and the docket of the state supreme court**

Both the Iowa Supreme Court and this federal Court have similar resources and busy dockets. *Hagen*, 964 F.Supp. 2d at 977. Time demands placed upon both courts are best served by certifying these questions to the Iowa Supreme Court. It strains credulity to suggest that this federal court should proceed in deciding issues of Iowa state law when related and possibly overlapping issues are already pending before the Iowa

Supreme Court in the pending Appeal. There is no benefit whatsoever to having two Courts evaluate whether and to what extent the rights that Plaintiffs seek to enforce in this litigation exist and are enforceable by Plaintiffs under Iowa state law.

**(5) The frequency that the legal issue in question is likely to recur**

In 2020, Madison Murhammer Colon authored a law review article titled How Can Iowans Effectively Prevent the Commercial Misappropriation of Their Identities? Why Iowa Needs a Right of Publicity Statute. Murhammer Colon, 106 Iowa L. Rev. 411 (2020). In that article, it was noted that a bill to allow student athletes to be compensated was recently passed by the Iowa Legislature and goes into effect in 2023. *Id.* at 429. Because there is no current right of publicity law or statute in Iowa "there is no clear mechanism for student-athletes to enforce their newly established rights to profit from commercial uses of their identities. *Id.* The increased use of social media and "deepfake" technology likewise raises concerns that the common and statutory law of Iowa is currently ill equipment to address rights of publicity issues. *Id.* at 430-2. Notably, the author advocates for limitations on any postmortem right to avoid monopoly and free speech concerns. *Id.* at 439. This is because overly broad postmortem rights may grant the heirs of an individual's right of publicity a "commercial windfall", contradicting the fundamental purpose of the right – to promote creative activities to benefit society and economic growth. *Id.* at 439 – 440.[1]

---

[1] The author of this article advocates for limiting rights of publicity to 25 years after a person's death; if this standard is adopted, Ruth C. Bisignano's right of publicity expired in in 2018, twenty-five years after she died.

Overall, as suggested by Murhammer Colon, the issues are best suited for resolution by the Iowa Legislature. In the absence of the Iowa Legislature statutorily adopting the right and limitations thereto, the Iowa Supreme Court is best suited to determine whether and to what extent the rights that Plaintiffs seek to pursue in this litigation can be pursued under Iowa's common law and Iowa's Probate Code for purposes of crafting case law that can be applied when the issue resurfaces due to student athlete endorsements, social media, and deep fake technology. Accordingly, this factor weighs in favor of certification.

**(6) The age of the current litigation and the possible prejudice to the litigants which may result from certification**

As is evident from the facts of this case, this matter revolves around probate proceedings that were closed more than two decades ago. The Petition for this Litigation was filed in 2020, more than twenty-seven years after Ruth Bisignano died in 1993. Ex. 4, Final Appellant Brief, p. 22-30. It is further alleged that Exile started using the name "RUTHIE" and a caricature of a woman balancing beer on her bosoms in 2012. Ex. 4, Final Appellant Brief, p. 25. Huntsman knew about this use as early as 2014, yet inexplicably waited six years to commence this action in 2020. *Id.* Given that Huntsman delayed inquiring about any rights he may have inherited from Ruth for decades and further delayed filing the present litigation for more than six years after he knew Exile commenced its allegedly improper use of Ruth's name and likeness, there is no prejudice that could possibly be sustained by Huntsman due to any delay caused by certification, if there even is any.

To that end, before this case was removed to this Court, the Iowa District Court for Polk County Iowa confirmed Plaintiffs have "not established an 'invasion or threatened invasion of a right' that would justify a permanent injunction." Doc. No. 5, p. 161 (Order on Cross Motion for Summary Judgment, p. 9-11). This is because Plaintiffs have not established that they have, as a matter of law, the exclusive right to use Ruth's name and/or likeness. *Id.* Plaintiffs further failed to allege with any specificity how they would be damaged by maintenance of the status quo, pending ultimate outcome of these proceedings. *Id.* The same logic applies now. There is no damage caused by maintenance of the status quo until these novel issues are resolved by the Iowa Supreme Court. Thus, this factor weighs in favor of certification.

**(7) Whether there is any split of authority among those jurisdictions that have considered the issues presented in similar or analogous circumstances.**

Where a dispute presents novel issues of state law peculiarly calling for the exercise of judgment by the state courts, it is appropriate for a federal court to certify the question to the state supreme court. *McKessen v. Doe*, 141 S.Ct. 48, 51 (2020) (speculation by a federal court about how a state court would weigh moral values and impose liability based upon those values of is disfavored). Moreover, if certification can ensure that a conflict between state law and the First Amendment is not purely hypothetical, certification of the state law question is appropriate. *Id.*

As noted in Madison Murhammer Colon article, How Can Iowans Effectively Prevent the Commercial Misappropriation of Their Identities? Why Iowa Needs a Right of Publicity Statute, the adoption of a right of publicity (or other similar unfair competition protections) is an inquiry that involves extensive state based policy considerations. Murhammer Colon, 106 Iowa L. Rev.

411 (2020). Some states have generally not adopted any right of publicity or protections legislatively or under their common law. *Id.* Every state that has adopted a right of publicity (either judicially or legislatively) has also adopted a broad range of limitations the right of publicity adopted. Those limitations range from when the right can be enforced post-mortem, to whether the right can be enforced by remote heirs, whether commercial use is required to enforce the right, or whether the right is limited in duration. Any decision as to which of these policies would be adopted and which would not be adopted would be conjectural on the part of this federal court. But these issues are determinative of whether any of the uses, as exemplified in paragraph 14(l) of the Motion filed herewith, are actionable. The Iowa Supreme Court is better suited than this federal Court to consider the multiple variations to rights of publicity adopted in other states to determine which of those variations, if any, should be adopted as Iowa's common law.

Further, depending upon what rights of publicity (or other unfair competition rights) are adopted by the Iowa Supreme Court, if any, there is a potential conflict between the state and federal law. See *Dryer v. National Football League*, 814 F.3d 938 (8th Cir. 2016) (holding that the copyright act pre-empts the plaintiff's state law based right of publicity claims); *Fioranelli v. CBS Broadcasting Inc.,* 232 F.Supp.3d 531 (S.D.N.Y. 2017) (photojournalist was not a producer of tangible goods offered for sale and thus was precluded from brining a Lanham Act claim for unfair competition; the Lanham Act claim amounted to nothing more than copyright infringement claim disguised as a Lanham Act claim); *Blades of Green, Inc. v. Go Green Lawn and Pest, LLC*, 2022 WL 1136888 at *4 (D. Md. 2022) (the plaintiff originated the name and description that the defendant used to market its services, which is not actionable as a false designation of origin claim under the Lanham Act; said act does not encompass the concept of giving credit to the creator of creative

works because those rights have been carefully defined by congress and protected under patent and copyright statutes); *In re Elster*, 2022 WL 552146 at *7 (Fed. Cir. Feb. 24, 2022) (First Amendment guarantees of free speech can apply to trademarks, particularly those that do more than identify the source of a product and go on to say something more on some broader issue; such speech does not lose its First Amendment protection merely because it is sold, nor is expressive speech entitled to less protection because it is printed on a product); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959 (1996) (the use of a person's identity primarily for the purpose of communicating information or expressing ideas is generally not actionable as a violation of a person's right of publicity; for example, baseball trading cards featuring caricatures of political and sport figures accompanied by humorous commentary about their careers constitutes protected speech).

In sum, depending upon what rights, if any, the Iowa Supreme Court adopts there may be a conflict between that law and federal intellectual property laws or the First Amendment. Certifying the requested questions to the Iowa Supreme Court ensures that any conflict between the law of Iowa and federal intellectual property laws is not purely hypothetical. Likewise, it ensures that a conflict between the law adopted and the First Amendment is not hypothetical. It does this by ensure the clear authority on the issues, the Iowa Supreme Court, decides the issues. Accordingly, the seventh factor weighs in favor of certification.

## III. CONCLUSION

Overall, the proposed questions would be determinative of the case at hand, and there is no clear controlling precedent under Iowa law concerning these questions. Thus, the two-part certification test identified in Iowa Code § 684A.1 is met. Beyond that the seven factors to be considered when weighing a Motion to Certify Questions to the Iowa Supreme Court all weigh

in favor of certification. Thus, this Court should exercise its discretion by certifying the proposed questions to the Iowa Supreme Court.

**WHEREFORE,** Exile Brewing Company, LLC respectfully requests that this Court certify to the Iowa Supreme Court the following questions:

1. If it is determined by the Iowa Supreme Court that the Probate Court had no jurisdiction to reopen these Estates, as a matter of Iowa law does any individual or entity have a legal intellectual property interest that may be pursued through a cause of action filed by or on behalf of deceased Iowa residents, Ruth C. Bisignano and/or Frank Bisignano.
2. If it is determined by the Iowa Supreme Court that Huntsman has no standing to reopen these Estates, as a matter of Iowa law does any individual or entity have a legal intellectual property interest that may be pursued through a cause of action filed by or on behalf of deceased Iowa residents, Ruth C. Bisignano and/or Frank Bisignano.
3. If it is determined by the Iowa Supreme Court that some individual or entity has a legal intellectual property interest that may be asserted by or on behalf of the deceased Iowa residents, Ruth C. Bisignano and Frank Bisignano, which of the following causes of action pled in the Second Amended Complaint, if any, would be adopted as Iowa's common law:

Count I: Appropriation of Name and/or Likeness under Iowa Common Law

Count II: Unfair Competition – Appropriation of the Commercial Value of Ruthie's Identity and Infringement of the Right of Publicity under Iowa Common Law

Count III: Unfair Competition – Misappropriation of Trade Values under Iowa Common Law.

Count V: Deceptive Marketing – Misrepresentations Regarding Endorsement and/or Approval Under Iowa Common Law.

4. For each cause of action adopted, what specific elements must be satisfied to meet the burden of proving that cause of action?
5. For each cause of action what statute of limitations applies?
6. For each cause of action, would the Iowa Supreme Court adopt the re-publication interpretation of the continuous tort doctrine? See *Blair v. Nevada Landing Partnership*, 369 Ill.App.3d 318, 323 (2006) (holding that re-publication of the same name and likeness in subsequent advertisements and different mediums did not constitute a new wrongful act, such that the continuous tort doctrine did not apply and the statute of limitations barred the plaintiff's right of publicity claim).
7. Would Iowa adopt the *Stouffer* six factor test to determine whether the speech at issue is expressive and, therefore entitled to First Amendment protection? See *In re Elster*, 26 F.4th 1328, 1333 (Fed. Cir. 2022); *UFO Magazine, Inc. v. Showtime Network, Inc.*, 2022 WL 16644914 (D. Wy. 2022); *Stouffer v. Nat'l Geographic Partners*, 460 F.Supp.3d 1133 (D. Colo. 2020); and *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959 (10th Cir. 1996))?
8. Would Iowa adopt the first sale doctrine? See *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1448 (11th Cir. 1998) (holding that once the holder of an intellectual property right consents to the sale of particular copies of her work, she no longer has the right to control the distribution with respect to such copies).

EXILE BREWING COMPANY, LLC, Defendant,

By: ______________________________

ENGLES, KETCHAM, OLSON, & KEITH, P.C.
1350 Woodmen Tower
Omaha, Nebraska 68102
(402) 348-0900 Fax (402) 348-0904
Robert S. Keith, #AT0012066
rkeith@ekoklaw.com
Kristina J. Kamler, #AT0009772
kkamler@ekoklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew G. Sease, #AT0010484
Scott M. Wadding, #AT0010447
Delaney J. Kozlowski, #AT0015277
Sease & Wadding
104 S.W. 4 St., Suite A
Des Moines, IA 50309
(515) 883-2222 Fax (515) 883-2233
msease@seasewadding.com
swadding@seasewadding.com
dkozlowski@seasewadding.com

*/s/ Kristina J. Kamler*