UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ESTATE OF RUTH C. BISIGNANO, by and through its administrator, FRED HUNTSMAN, and ESTATE OF FRANK BISIGNANO, as successor in interest to RUTHIE BISIGNANO, by and through its administrator, FRED HUNTSMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>EXILE BREWING COMPANY, LLC,<br><br>Defendant. | CASE NO. 4:22-cv-00121<br><br>BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER FOR THE DEPOSITION OF ATTORNEY AMANDA GREEN<br><br>**(Oral Argument Requested)**<br><br>**\*\*\*EXPEDIATED RELIEF REQUESTED\*\*\*** |

**COME NOW,** Plaintiffs, by and through the undersigned counsel and hereby provides the following brief in support for a protective order to prohibit the deposition of the Estate Plaintiffs' attorney of record:

I.  INTRODUCTION AND FACTUAL BACKGROUND[1]

This matter involves claims brought by the Estate of Ruthie Bisignano and Estate of Frank Bisignano ("the Estates") against Exile Brewing Company, LLC ("Exile") involving the use of the late Ruthie Bisignano's name, image, and likeness to market and sell their lager beer. The Estate of Frank Bisignano was was

---

[1] The District Court in this action has previously provided a thorough procedural and factual background in this matter in the order denying a request for state supreme court certification. (ECF 54). This introduction and background is only intended to provide a brief relevant background pertinent to this motion for a protective order.

1

petitioned to be reopened on March 9, 2020, by Frank Bisignano's nephew, Fred Huntsman, to pursue these claims against Exile. Frank Bisignano's Estate was allowed to be reopened and a petition was filed against Exile on June 2, 2020. Following arguments by Exile, the Estate of Ruthie Bisignano was petitioned and ultimately reopened by Fred Huntsman on September 22, 2020. Both of these Estates were opened with the aid of Amanda Green ("Ms. Green"), an Iowa licensed attorney. Following the reopening of the administration of both of these Estates, Ms. Green was designated as the attorney for both Estates.

Ms. Green continues to serve as the attorney for both Estates. In this role, she makes periodic filings with the probate court to provide a status update of the matters, filing of extensions to close the Estates, and filing requests to retain litigation counsel. She also aids Mr. Huntsman with the filing of inventories and the filing of the petitions to reopen the Estates.

The probate proceedings of the Estates have not been without litigation. In August 2021, Exile filed motions to dismiss and vacate the Estate proceedings. The motions were heard by the probate court and ultimately denied. Exile has appealed that matter and it is currently pending before the Iowa Supreme Court.

On March 31, 2023, counsel for Exile indicated to counsel for the Estates that she wished to depose Ms. Green. Counsel for the Estates indicated that this was improper, and the Estates would be objecting to this request. On April 3, 2023 counsel for Exile reasserted her intention to depose Ms. Green. On April 4, 2023 counsel for the Estates again asserted an objection to this request and requested a

time to meet and confer regarding the request. Exile's counsel never responded to the request for a meet and confer and sent a notice of deposition on April 5, 2023. Following the previously scheduled deposition of one of Exile's expert witnesses on April 7, 2023, counsel for the Estates and Exile discussed the deposition of Ms. Green. Following the discussion, the parties recognized they were at an impasse and Exile asserted their intention to move forward with the deposition of Ms. Green on April 20, 2023.

## II.    LEGAL STANDARDS

"Pursuant to Fed. R. Civ. P. 26(c), the Court may issue a Protective Order to protect a party or person from 'annoyance, embarrassment, oppression, or undue burden or expense.' This includes forbidding, specifying the terms, prescribing the method for, or limiting the scope of discovery." *Golden v. Stein*, 4:18-cv-00331-JAJ-CFB, 2020 WL 1487306 at *3 (S.D. Iowa March 4, 2020) (citing Fed. R. Civ. P. 26(c)(A)-(D)). Prior to filing a request for a protective order pursuant to Fed. R. Civ. P. 26(c), the parties must engage in a good faith attempt "in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1).

While there is not a complete prohibition of deposing opposing counsel, however, the Eighth Circuit has limited the instances for when it is appropriate to do so. *Shelton v. America Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). "[T]hose circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the

information is crucial to the preparation of the case." *Id.* However, an attorney may be deposed if the party "seeks relevant information uniquely known by [the] attorneys about prior terminated litigation, the substance of which is central to the pending case." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002).

In speaking on the general disfavor of deposing counsel, the Eighth Circuit states as follows:

> Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy. The practice of forcing trial counsel to testify as a witness, however, has long been discouraged, *see Hickman v. Taylor*, 329 U.S. 495, 513, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947) (it causes "the standards of the profession [to] suffer"), and recognized as disrupting the adversarial nature of our judicial system, *see id.* at 516, 67 S.Ct. at 396 (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions…on wits borrowed from the adversary."). Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on truthful communications from the client to the attorney is obvious.

*Shelton*, 805 F.2d at 1327.

## III.   ARGUMENT

Exile seeks to depose the counsel of record and designated attorney of the Estates. First, it must be noted what Ms. Green's role is as the attorney for the Estate. In requesting the deposition of Ms. Green, Exile has asserted that she is a "fiduciary" of the Estates. This is simply not the case.[2] Instead, Fred Huntsman has been appointed as the executor of the Estates. With that, he is allowed to select an attorney of his own choice. *Matter of Estate of Buck*, 569 N.W.2d 400, 401-02 (Iowa Ct. App. 1997); *see also* Iowa Code § 633.82 ("The designation of the attorney employed by the fiduciary to assist in the administration of the estate shall be filed in the estate proceedings."). "The relationship of an attorney and client is a confidential one and it must, of necessity, be based on mutual trust." *Id.* at 401. Importantly, an attorney for an estate is not a fiduciary, but instead they are "employed ***by*** the fiduciary to ***assist*** in the administration of the estate." Iowa Code § 633.82. All of Ms. Green's filings on behalf of the Estates has not been as a fiduciary, but instead have merely been as the attorney designated by the fiduciary to assist with the administration of the Estates.

According to Exile, they seek to depose Ms. Green on the following issues:

> Thus, we seek to depose her regarding the extensive delays in filing this suit, communications that Mrs. Greene [sic] has had with heirs (which would be a further waiver of any privilege as these individuals are not represented by the Estate), actions taken by Ms. Greene [sic] to notify heirs of the investigation

---

[2] Generally, as an attorney for the Estate, Ms. Green (as all attorneys representing a client) may have some fiduciary responsibilities, but this does not mean that she is a fiduciary with decision making powers to make independent decisions regarding the Estate.

5

>regarding the property owned by these Estates or this litigation, decisions to file this litigation, harm incurred by the Estates, and the ongoing administration of these Estates.

(Exhibit ) Recognizing that the relationship between Ms. Green and the Estates is one of attorney-client, this Court should apply the *Shelton* factors and determine that it would be improper to depose Ms. Green.

### A. *Other means exist(ed) to obtain the information*

Each of these areas of inquiry sought by Exile could have been, or were, areas of inquiry to Mr. Huntsman and/or the heirs of the Estates. Exile deposed Mr. Huntsman on July 30, 2021 and further deposed three other heirs on March 17, 2022 and March 18, 2022. Each of these questions could have been (and in many instances were) specifically asked to each of these individuals. Further, and as it certainly relates to Mr. Huntsman, most of these questions (if not all) were specifically asked during the prior depositions.

### B. *The information sought is not relevant and is privileged*

It is abundantly clear that the information sought would be protected under both the work product doctrine and general attorney client privilege. Specifically, exiles request to information regarding "decisions to file this litigation," "harms incurred by the Estates," and "extensive delays in filing this suit" are quintessential areas of attorney-client communications that are protected by the attorney-client privilege. Obviously, any communications Ms. Green may have had with Mr. Huntsman regarding filing of this action must be protected by attorney client privilege. Exile's statements that any privilege asserted by Ms. Green are not

6

grounded in any fact or law. Simply filing this litigation cannot waive those attorney client privileges. If that were the case, then in every wrongful death action the attorney for the estate of the decedent would be subjected to discovery, deposition, and/or trial testimony. This cannot be the case.

### C. *The information is not crucial to this case*

Finally, the information sought is not crucial to these proceedings. It will not aid the fact finder in any way how the estate will continue to be administered or actions were taken "to notify heirs of the investigation regarding the property owned by these Estates." These issues regarding the administration of the Estates are left solely to the probate proceedings and have no effect on the determination regarding the claims brought in these proceedings against Exile. Likewise, any communications that Ms. Green had with an heirs of the Estate would not be crucial to this case. To the extent that Exile wishes to confirm what has been previously disclosed, this too is an improper reason to depose opposing counsel. *See Golden v. Stein*, 4:18-cv-00331-JAJ-CFB, 2020 WL 1487306 at *8 (S.D. Iowa March 4, 2020) ("A party cannot depose opposing counsel to explore its suspicions about whether counsel truthfully or fully responded to discovery requests.")(citing *Shelton*, 805 F.2d at 1327-28; *Smith-Bunge v. Wisconsin Central, Ltd.*, 946 F.3d 420, 423 (8th Cir. 2019)). Because Exile cannot satisfy the three-part *Shelton* test, this Court should enter a protective order prohibiting Exile from deposing Ms. Green.

### D. The Pamida *case does not support Exile's position*

It is anticipated that Exile will rely on *Pamida v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002) to justify deposing Ms. Green. The Eighth Circuit in *Pamida* held that it may be allowable to depose "an opposing counsel if a party 'seeks relevant information uniquely known by [the] attorneys about prior terminated litigation, the substance of which is central to the pending case.'" *Smith-Bunge*, 946 F.3d at 423 (quoting *Pamida* 281 F.3d at 731). Exile cannot satisfy their burden.

First, all of the questions sought by Exile involve pending litigation. They do not seek to question Ms. Green about any "prior terminated litigation." Indeed, as of the filing of this motion, there is no terminated litigation. The probate proceedings are still active and Exile has inserted itself into those proceedings as an adverse party. Ms. Green is not an attorney to any terminated litigation and as such, Exile cannot satisfy its burden. Further, as mentioned in section *C. supra*, the information sought by Exile is not central to this matter. Instead, it appears that Exile is attempting to go on a fishing expedition with Ms. Green and engage in the type of improper litigation tactics that the Court in *Shelton*, sought to discourage. 805 F.2d at 1330 ("The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.").

It is worth noting that Exile's counsel should be well aware of these standards as an attorney from her own office was the subject of a similar argument. In *Ultimate Motorcars, Inc. v. Houston Specialty Insurance Company*, 8:21CV393, 8:21CV395, 2022 WL 16951458 (D. Neb. Nov. 14, 2022), the Defendant sought to take the deposition of an attorney at the Engles, Ketcham, Olson, Keith, law firm that was previously retained "regarding the application of Nebraska law to Plaintiffs' claims under the insurance policy. Mr. Moran was provided information by [the insurer] and Defendant but did not otherwise have firsthand knowledge or investigate Plaintiffs' claims." *Id.* at *1. In the follow up breach of contract litigation after the insurer failed to make payments under the terms of the policy, the Plaintiff insured sought to depose Mr. Moran regarding his prior representation. *Id.* Ultimately, the court in *Ultimate Motorcars*, found that Mr. Moran could not be deposed. *Id.* at 4. Specifically, the court found that *Pamida* was "inapplicable because neither of [the] topics are 'peculiarly' or 'uniquely' within Mr. Moran's knowledge, nor as Defendant done anything to waive privilege. Moreover, *Pamida* applies when a party seeks such information about 'prior terminated litigation,' which is not the case here." *Id.* at 3. This Court should follow the same logic in *Ultimate Motorcars*, and enter an order prohibiting Exile from deposing Ms. Green.

## IV.   CONCLUSION

The Estates respectfully request the Court enter an order prohibiting Exile from taking the deposition of the Estates' counsel Ms. Green. This Court should find that the *Shelton* test is applicable to this case and that Exile cannot meet its

9

burden to depose Ms. Green. The Estates request that this matter be set for oral argument and requests that this motion proceed in an expeditated manner as the deposition is set for April 20, 2023.

Respectfully submitted,

/s/ *Matthew G. Sease*
Matthew G. Sease AT0010484
Scott M. Wadding  AT0010447
Delaney J. Kozlowski AT0015277
SEASE & WADDING
104 Southwest Fourth Street
Des Moines, Iowa 50309
Telephone: (515) 883-2222
Facsimile: (515) 883-2233
msease@seasewadding.com
swadding@seasewadding.com
dkozlowski@seasewadding.com
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on April 11, 2023, a true and correct copy of the foregoing document was served by electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

/s/ *Matthew G. Sease*

## SERVICE LIST

Kristina J. Kamler
ENGLES, KETCHAM, OLSON, & KEITH, P.C.
1350 Woodmen Tower
Omaha, Nebraska 68102
Telephone: (402) 348-0900
Facsimile: (402) 348-0904
kkamler@ekoklaw.com
ATTORNEY FOR DEFENDANT